## LEONG SHEE v. WHITE, Commissioner of Immigration.

(Circuit Court of Appeals, Ninth Circuit. February 4, 1924.)

### No. 4031.

Aliens ⚙=32(13)—Decision of immigration officers held one of fact and not reviewable.

The decision of the immigration authorities that a Chinese woman, seeking admission as the wife of a citizen, was not his wife, but that he had a wife living in China from whom he was not divorced, where the testimony as to the facts relied on to constitute a divorce under the Chinese law was in conflict, held, one of fact and not of law, and not reviewable by the courts.

Appeal from the District Court of the United States for the First Division of the Northern District of California; Frank H. Rudkin, Judge.

⚙=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Petition of Leong Shee against Edward White, Commissioner of Immigration for the Port of San Francisco, for writ of habeas corpus. From an order denying the writ, petitioner appeals. Affirmed.

Geo. A. McGowan, of San Francisco, Cal., for appellant.

John T. Williams, U. S. Atty., and Alma M. Myers, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. This is an appeal from an order denying a petition for writ of habeas corpus. The case is as follows: Leong Shee, a Chinese woman, appellant here, arrived in San Francisco in September, 1917, and applied for admission into the United States as the wife of Louie Him, conceded to be a native-born citizen of the United States. At the first examination by the immigration authorities, Leong Shee testified that she was married to Louie Him in China in 1907 and was thereafter his wife; that she had heard of the death of Louie Him's first wife before her own marriage. Louie Him testified that he had been married before in China to a Chinese woman, Wong Shee, but that Wong Shee died in China in December, 1902, before his marriage to Leong Shee in 1907. Not being satisfied that as a fact Wong Shee, the first wife, was dead, the Commissioner of Immigration paroled Leong Shee, and she went to Arizona and there lived with Louie Him and bore a child by him. Thereafter the immigration authorities made further inquiry into the marital status of Leong Shee, and denied her the right of admission, upon the ground that the evidence satisfied them that the first wife of Louie Him was not dead, but was alive.

Acting under advice of the authorities in the United States, the vice consul at Canton, China, made formal inquiry into the alleged death of Wong Shee. At that inquiry the mother of Leong Shee testified that her daughter, Leong Shee, was the concubine of Louie Him, and that Him's first wife was living, but that Leong Shee was married to him according to Chinese custom. Wong Shee also testified before the consul that she was the wife of Louie Him, and she recognized photographs of Louie Him and Leong Shee and identified them as pictures of her husband and his concubine. She said she had remained in China to look after her three children, whose father was Louie Him.

After this testimony was received from China, in the course of the proceedings, Louie Him, in an affidavit filed with the Department of Labor, deposed that according to the customs in China, where Louie Him and Leong Shee had resided, he and Wong Shee, after a quarrel over money matters, had separated by mutual consent in 1902, and had never afterward lived together; that because he felt that the situation was a matter of "keen humiliation" to him he had preferred to conceal the fact of the "divorce," and therefore had stated to the immigration authorities that his first wife, Wong Shee, was dead. Leong Shee also made affidavit to the effect that upon her arrival in the United States she too had said Wong Shee had died in 1902, but

that she knew of the prior marriage of Louie Him, and believed that he was a divorced man when Louie Him married her.

In 1921 final order denying admission was made. The District Court held that on grounds of public policy the courts of the United States will not recognize plural marriages or the right of Chinese subjects to terminate the marriage relation by agreement or at will.

Appellant's argument is that the District Court and the Department of Labor made an erroneous application of law; that the matter of marriage and divorce was wholly a local concern; that the marriage of Louie Him and his first wife, Wong Shee, and their alleged subsequent separation by mutual consent, and the subsequent marriage of Louie Him and Leong Shee, all occurred within China where all of the parties resided at the times in question, and were subject to the laws and customs of China; and that the courts of this country will accord to such marriages and "divorce" full recognition.

If we could accept it that the record establishes the facts as counsel deduces them, we would consider and decide the legal questions which have been ably presented. But it is too well settled to require citation of authorities that the question of the existence of facts upon which a Chinese alien's right to land in the United States is made by statute to depend is to be decided by the executive branch of the government. This case falls within that principle. In the present matter Louie Him was discredited by radical variances in his testimony upon the vital question of the history of his marriage to Wong Shee. The courts cannot hold that the immigration authorities violated any legal principle when, as between the inconsistent stories told, they refused to accept either the first statement of Louie Him that his wife, Wong Shee, was dead, or his subsequent statement in 1920 that she was not dead, but that he had quarreled with her in 1902, and that their marriage was "terminated by mutual consent." Nor can it be said by the judicial branch of the government that the executive authorities went beyond their powers in finding that Wong Shee was telling the truth when she testified that she was Him's legal wife and that Leong Shee was his concubine. Decision of these matters was a determination of facts on which the right of the applicant to land depended. The executive department has acted within its powers, and the courts will not interfere.

The order appealed from is affirmed.